181    93
194   470
181          93
26 SC ¹429

# Terence J. Donahue, Appellant, *v.* Thomas C. Kelly.

[Marked to be reported.]

*Negligence—Mistake of judgment—Position of peril—Unusual cause of peril—Act done for self preservation.*

One who in a sudden emergency acts according to his best judgment or who, because of want of time in which to form a judgment, omits to act in the most judicious manner is not chargeable with negligence.

There is no liability for an injury inflicted by one person upon another, even though the injured person be free from fault, if the cause of the injury was unusual, and one which reasonable and careful human foresight could not have foreseen as such, and which, under the circumstances, such care and foresight could not have guarded against. Such an injury without any want of ordinary care upon the part of the person inflicting it, is considered an inevitable accident.

Where a servant in a restaurant takes up a burning lamp and carries it from a room, and in doing so catches fire and, to save himself, throws the lamp from him, a customer of the restaurant who is injured by the explosion of the lamp cannot recover damages from the proprietor of the restaurant.

*Negligence—Gasoline—Act of May 15, 1874.*

A person cannot be convicted of negligence in keeping gasoline upon his premises in violation of the provisions of the Act of May 15, 1874, P. L. 189, sections 1, 5, 8 where it appears that the gasoline was kept in a restaurant for illuminating purposes, and not for sale, and there is no proof that the gasoline was less than 110 degrees Fahrenheit, or that it was explosive within the prohibition of the act.

Argued March 24, 1897. Appeal, No. 609, Jan. T., 1896, by plaintiff, from order of C. P. No. 1, Phila. Co., Dec. T., 1893, No. 1331, refusing to take off nonsuit. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for personal injuries. Before BIDDLE, P. J.

At the trial it appeared that on January 3, 1894, the plaintiff was injured by the explosion of a gasoline lamp which had been used for the purpose of lighting the outside of the restaurant, but on the day of the accident was hanging in a closet inside the restaurant on a nail from which it fell. The gasoline ran out on the floor and was ignited by a lighted match which one of the defendant's servants had thrown on the floor without noticing the escaped gasoline. Another of defendant's servants,

Clegett, discovered the fire and taking up the lamp, attempted to carry it to the door, and while doing so his clothes caught fire, which caused either the lamp to explode or the flame to flare out, and the plaintiff, a customer in the restaurant, was burned and severely injured.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*James M. Beck,* with him *W. F. Harrity* and *John T. Murphy,* for appellant.—Defendant was negligent in having gasoline at all. The jury would have been justified in finding this, as the Act of May 15, 1874, P. L. 189, sections 1, 5 and 8, has in effect made illegal the sale or use of gasoline: Elkins v. Mc-Kean, 79 Pa. 493. The jury might have found that in any event gasoline should not be used or kept in the interior of a building.

On every motion for a nonsuit the verity of the plaintiff's testimony is assumed: Wilson v. Penna. R. Co., 177 Pa. 511.

The question is not whether it is an accident, but whether it is an accident which, by ordinary care, might have been averted. If it could, the defendant was liable. If it could not, and it was an inevitable accident, the defendant was entitled to his nonsuit: Judd v. Ballard, 66 Vt. 668; Henderson v. State, 98 Ala. 35; Beach v. Parmeter, 23 Pa. 196; McGrew v. Stone, 53 Pa. 436.

The true question in this case was, therefore, whether the injury to this plaintiff might have been averted by the use of ordinary care: Smith on Negligence (2 Eng. ed.), 419: 16 Am. & Eng. Ency. of Law, 449; 1 Shearman & Redfield on Negligence, sec. 59; Graham v. Badger, 164 Mass. 42; Dixon v. Pluns, 98 Cal. 388; Clare v. Nat. City Bank of N. Y., 1 Sweeney (N. Y.), 539; Byrne v. Boadle, 2 Hurlstone & Coltman, 722; Scott v. London Dock Co., 3 Hurl. & Colt. 596; Huey v. Gahlenbeck, 121 Pa. 238; Boyd v. Ins. Patrol, 113 Pa. 269; Mullen v. St. John, 57 N. Y. 567; Volkmar v. Manhattan Ry. Co., 134 N. Y. 418; Kearney v. Ry. Co., L. R., 5 Q. B. 411; Manning v. West End St. Ry. Co., 44 N. E. Rep. 135; Briggs v. Oliver, 4 Hurl. & Colt. 403; Lyons v. Rosenthal, 11 Hun, 46; Kelly v. Cohoes Knitting Co., 84 Hun, 154.

Explosion of dynamite, or a heavy blast, raises a presumption of negligence: Judson v. Giant Powder Co., 40 Pac. Rep. 1020; Klepsch v. Donald, 8 Wash. 162. So does falling of an iron bar or hot cinder from an elevated railroad: Hogan v. Ry. Co., 26 N. Y. Supp. 792; Brooks v. Kings Co. El. R. R., 23 N. Y. Supp. 1031; Wiedmer v. R. R., 41 Hun, 284. Or the falling of ice or snow from a roof of unusual construction near the street: Shepard v. Creamer, 160 Mass. 496. Or the falling of a cistern wall in course of construction: Mulcairns v. City of Janesville, 67 Wis. 24. Or the explosion of a boiler: John Morris Co. v. Burgess, 44 Ill. App. 27. Or the falling of a keg from a window: Corrigan v. Union Sugar Refinery, 98 Mass. 577. Or the falling of a pipe on a public wharf: Dunn v. Ballantyne, 38 N. Y. Supp. 1102. Or the escaping of gas from defendant's pipes: Smith v. Boston Gas Light Co., 129 Mass. 318; Koelsch v. Phila. Co., 162 Pa. 355; Prichard v. Consolidated Gas Co., 39 W. N. C. 28; Henderson v. Heating Co., 39 W. N. C. 485. The mere fact that water ran from defendant's hydrant into the plaintiff's apartment: Warren v. Kauffman, 2 Phila. 259.

*Andrew J. Maloney*, for appellee.—No one can be charged with carelessness when he does that which his judgment approves, or when he omits to do that which he has no time to judge of. Such act or omission, if faulty, may be called a mistake, but not carelessness: Brown v. French, 104 Pa. 604; Pollock on Torts (ed. 1887), *149; Scott v. Shepard, 2 Blackstone, 892; Ray's Negligence of Imposed Duties (ed. 1891), 133; Behling v. Pipe Lines, 160 Pa. 359; Pittsburg Southern Ry. Co. v. Taylor, 104 Pa. 306.

It will be noticed that in all cases which apply the doctrine of res ipsa loquitur there was no explanation of the cause of the accident, because it was beyond the power of the plaintiff to show it. In the cases cited in the plaintiff's argument, as illustrating this principle, where it was really applied, it will be found that there was no explanation as to the cause of the accident, and that as far as the plaintiff was concerned it was shrouded in mystery.

The cases cited by the plaintiff where there was any evidence on the part of plaintiff as to cause of accident were ruled on

the ground, not of res ipsa loquitur, but that the negligence was affirmatively established.

To warrant a submission of the case to the jury there must be evidence from which in the opinion of the judge the jury might reasonably infer negligence. Not every case where the plaintiff thinks there is sufficient to warrant that inference is to go to the jury, for if that were so, there would seldom if ever arise a case in which the court could enter a nonsuit: Cotton v. Wood, 8 C. B. N. S. 568; Cornman v. Eastern Counties Railway Co., 4 H. & N. 781.

Opinion by Mr. Justice Green, April 26, 1897:

It is beyond all question that the cause of the unfortunate injury suffered by the plaintiff, was the act of Clegett in throwing the burning lamp. That he was trying to throw it out of the door was affirmatively proved by the plaintiff's witness Monaghan, and was not at all disputed. In the passage of the lamp through the air it exploded, according to the testimony of Monaghan, and the burning fluid falling upon the plaintiff caused his injury. It is suggested by the learned counsel for the plaintiff that the defendant was negligent in merely having the gasoline on his premises, under the provisions of the act of May 15, 1874, and that this would be sufficient to support the allegation of negligence upon which the right of recovery is based. But an examination of the act does not support the contention. The first section provides that "no refined petroleum, kerosene, naphtha, benzole, gasoline or any burning fluid, be they designated by whatsoever name, the fire test of which shall be less than one hundred and ten degrees Fahrenheit, shall be sold or offered for sale as an illuminator for consumption within the commonwealth of Pennsylvania." It is very plain that this section can have no application to the facts of this case. There was no proof that this gasoline was of less than one hundred and ten degrees Fahrenheit, and there was no evidence that the defendant either sold or offered for sale this or any other gasoline. He was therefore not subject to the terms of this section. Section 8 provides that "All benzine, naphtha or any hydro-carbons created in the manufacture of refined oil from crude petroleum, or otherwise manufactured, shall be inspected and branded 'benzine,' and shall not be kept for sale or

used in any way for giving light to be burned in lamps." This section does not include gasoline, nor refer to it in any way. There was no evidence to prove that the gasoline used by the defendant was explosive within the prohibition of the act, or that it was necessarily dangerous for use in lamps. The fifth section of the act merely provides penalties for violations of the provisions of the act. It is apparent therefore that the charge of negligence for the purposes of recovery in this action cannot be sustained by the application of the act in question. The question then recurs was the defendant liable as for culpable negligence on account of the act of his employee in throwing the lamp as he did? It is not to the purpose that the jury might have found the defendant guilty of negligence for the several reasons mentioned in the argument for the appellant, because the plaintiff's injury was the manifest result of the throwing of the lamp, and not of any of the other matters suggested. The inquiry is thus narrowed by the actual state of the testimony which is entirely undisputed.

The principles which control the judicial contemplation of such an act are extremely simple and thoroughly well settled. The testimony, all of which was introduced by the plaintiff, clearly shows that the act of the employee who threw the lamp was done at a moment when he himself was in flames, and as an indispensable and urgent act of self preservation. He was endeavoring to remove the lamp from the room, an entirely proper and commendable action. To do this he had taken it in his hands and was proceeding towards the door when the flames emitted from the burning fluid, attacked him and threatened him with most serious and, possibly, fatal results. To escape from this calamity he instinctively threw the lamp from him, but not until he was severely burned. Such an act, done in such extreme circumstances, is not to be judged by the rules which are applicable ordinarily to acts done in cool blood, with time and opportunity for the party to consider the consequences and the methods of the act he is about to do. The decisions of this and other courts are very numerous, in the application of the principle to cases in which persons suddenly placed in positions of peril and impending danger, do things which ordinarily would be acts of negligence. The same principle applies where innocent third persons sustain injuries from acts done in similar

circumstances.  The doctrine is well expressed in Pollock on Torts (ed. 1887), star page 149, thus, " As to injuries received by an innocent third person from an act done in self defense, they must be dealt with on the same principle as accidental harm proceeding from any other act lawful in itself.  It has to be .considered, however, that a man repelling imminent danger cannot be expected to use as much care as he would if he had time to act deliberately."  A suitable illustration of the doctrine is to be found in the case of Brown v. French, 104 Pa. 604, where we held that one who in a sudden emergency acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence.  Such act or omission, if faulty, may be called a mistake, but not carelessness.  The plaintiff's husband in this case attempted to cross the Ohio river in a skiff at a dangerous place and lost the control of his boat which fouled a barge in tow of a steamer.  Efforts were made by one of the steamer's crew to rescue him, but they were unavailing and he was drowned.  His wife brought an action against the owners of the steamer for damages for her husband's death, alleging negligence in the efforts made to save him.  GOR-DON, J., delivering the opinion, said, " Nevertheless as we have said, an attempt was made to save his life ; unfortunately it was unsuccessful, and it is now said that the effort was misdirected, or not properly seconded by the pilot of the steamer ; that the boat ought to have been backed.  Well, let it be so, that by a manœuvre of that kind this man's life could have been saved ; does it follow that it was an act of carelessness not to have done so ?  Certainly not.  Here was an accident sprung upon the pilot for which he was wholly unprepared.  In order to avoid the consequences of it he must first understand accurately its nature and probable effect; he must then determine what was best to be done, and this determination must be had in view of all the circumstances by which he and his craft were surrounded. All this required time, but the time allowed in this case was too short for any but an exceptionally active mind to entertain and execute a successful plan of rescue.  Under such circumstances we cannot agree that a mistake in judgment is an act of carelessness."  Just so in the present case.  When Clegett in his effort to remove the lamp discovered that he was himself in

flames and therefore cast it from him towards the door, his act must be regarded as being done upon a sudden and unexpected emergency, subjecting him to imminent peril. He had no time to consider what was best to be done, or how he could best avoid doing injury to others. His instinct of self preservation prompted him to cast from him the implement which threatened his life, and for so doing he is not to be charged with an act of negligence as to others.

In the celebrated case of Scott v. Shepherd, 2 Blackstone, 892, 1 Sm. Lead. Cases (9th ed.), p. 737, commonly called the Squib case, it was agreed by all the judges that the intermediate throwers of the squib between the first thrower and the plaintiff were not liable for the injury to the plaintiff, because their acts were done in self defense. DEGREY, C. J., said, "It has been urged that the intervention of a free agent will make a difference, but I do not consider Willis and Ryal as free agents in the present case, but acting under a compulsory necessity for their own safety and self preservation." In 16 Am. & Eng. Ency. of Law, 396, it is said, "There is no liability for an injury inflicted by one person upon another, even though the injured person be free from fault, if the cause of the injury was unusual, and one which reasonable and careful human foresight could not have foreseen as such, and which, under the circumstances, such care and foresight could not have guarded against. Such an injury without any want of ordinary care upon the part of the person inflicting it is considered an inevitable accident." Citing many cases in the notes. In the case of Brown v. Kendall, 6 Cush. 292, the plaintiff's and the defendant's dogs were fighting : the defendant was beating them in order to separate them, and the plaintiff was looking on. The defendant retreated backwards from before the dogs striking them as he retreated, and as he approached the plaintiff, with his back towards him, in raising the stick over his shoulder in order to strike the dogs, he accidentally hit the plaintiff in the eye inflicting a severe injury. It was held that the act of the defendant was a proper and lawful act, and if he used all proper precautions necessary to the exigency of the case and, in raising his stick to strike the dogs, he accidentally hit the plaintiff in the eye and wounded him, this was the result of pure accident, or was involuntary and unavoidable, and therefore the action would not lie.

It would be very easy to multiply citations to the same effect but it is quite unnecessary. The controlling principle applicable to all is thoroughly familiar and is not disputed. In our opinion it controls the determination of the present case.

Judgment affirmed.