## Luken *v.* Pennsylvania Railroad, Appellant.

*Negligence—Railroads—Automobiles — Stop, look and listen— Duty to continue looking after stopping—Grade crossing.*

1. Although an automobile stops at a point on a road where people usually stop, look and listen before proceeding to cross over railroad tracks, the duty rests upon the driver to continue, until he reaches the railroad, to look for an approaching train and to observe the precaution which the situation requires. His whole duty is not confined to stopping, looking and listening. After doing so, it is his duty, when he proceeds towards the crossing, to keep a vigilant and continuing outlook.

2. In an action against a railroad company to recover damages for the death of plaintiff's father in a collision between a train and an automobile, a verdict and judgment for plaintiff cannot be sustained, where it appears deceased and his driver approached, in an automobile, a railroad crossing at grade; deceased was sitting on the front seat to the right of the driver; they stopped, looked

and listened at a point near a "Stop, Look and Listen" sign, where people usually did so, before proceeding to cross the tracks; from this point there was a view of several hundred feet to the right from which direction the train was coming; having looked at this point they proceeded, and as they advanced towards the tracks their view became restricted and was finally cut off by the railroad station, a frame structure alongside the road to the right; as they proceeded and came on a line with the station, the driver could have had a clear view of the railroad between the station and the front rail for more than 400 feet to the right, and at a single glance he would have seen the approaching train, which he could have avoided by stopping the automobile; and the driver admitted that, after he had stopped, looked and listened, he did absolutely nothing more as a precaution against the danger which he knew might be, and actually was, ahead of him.

3. Even without the admission of his negligence, the driver could not be heard to say that he had exercised proper care, for if he had looked where he ought to have looked he could have seen the approaching train.

Argued March 2, 1920. Appeal, No. 252, Jan. T., 1920, by defendant, from judgment of C. P. Berks Co., Aug. T., 1918, No. 13, on verdict for plaintiff, in case of Harry Russell Luken, by his next friend and guardian, Milton C. Kreider, v. Pennsylvania Railroad Co. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Reversed.

Trespass for death of plaintiff's father. Before WAGNER, J.

The circumstances of the accident are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $4,700. Defendant appealed.

Errors assigned, among others, were (7) refusal of binding instructions for defendant, and (8) refusal of defendant's motion for judgment n. o. v.

Cyrus G. Derr, for appellant, cited: Cookson v. P. & W. Ry., 179 Pa. 184; Muckinhaupt v. Erie R. R., 196 Pa. 213; Corcoran v. Penna. R. R., 203 Pa. 380; Waltosh v. Penna. R. R., 259 Pa. 372.

*John B. Stevens,* with him *Wilson S. Rothermel,* for appellee, cited: Benner v. Phila. & R. Ry., 262 Pa. 307; McDyer v. Eastern Penna. Rys., 227 Pa. 641.

OPINION BY MR. CHIEF JUSTICE BROWN, April 19, 1920:

On the afternoon of June 6, 1917, at about four o'clock, an automobile belonging to Harry J. Luken, and in which he was riding, was struck by a through express train of the defendant company on a road crossing at Monocacy station, in Berks County. At the time of the collision, as a result of which Luken died several hours later, one of his employees was driving the automobile, the deceased sitting beside him to the right, on the front seat. As they approached the station from the north they passed by a "Stop, Look and Listen" sign erected along the public road about seventy-six feet from the railroad tracks, and stopped at a point between them and the signboard, from which there was a view of several hundred feet in the direction from which the train was coming. The driver of the automobile testified that, after looking at that point and seeing no train in sight, he started, and immediately after he had passed the railroad company's station, which was to his right, the collision occurred. In this action, brought by the next friend and guardian of the minor son of the deceased, the negligence of the defendant company and the contributory negligence of the deceased, to whom the negligence of his employee was admittedly imputable, were submitted to the jury, whose verdict was in favor of the plaintiff. On the present appeal by the defendant from the judgment entered on it, the ground upon which learned counsel for appellant asks that it be reversed is contributory negligence. It seems that the deceased had an adopted son, and a further contention is that he ought to have been named as one of the plaintiffs. We need not pass upon this, in view of the judgment we are compelled to enter.

The driver of the automobile was called as a witness by the plaintiff, and from his own lips there came a confession of his carelessness in driving up to the railroad tracks, which clearly bars the right of the minor child of his deceased employer to recover for the father's death. Though the automobile stopped, according to the testimony, at a point on the road where people usually stopped, looked and listened before proceeding to cross over the railroad tracks, the duty rested upon the driver to continue, until he reached the railroad, to look for an approaching train and to observe the precaution which the danger of the situation required. His whole duty was not confined to stopping, looking and listening. After doing so, when he proceeded towards the crossing, it was his duty to keep a vigilant and continuing outlook: Cookson v. Pittsburgh & Western Railway Company, 179 Pa. 184; Muckinhaupt v. Erie R. R., 196 Pa. 213; Provost v. Director General of Railroads, 265 Pa. 589.

Immediately after the automobile started from the point where it had stopped for the purpose of enabling the driver to determine whether it was safe to proceed, the view of the railroad to the right—the direction from which the train was coming—became restricted by the station—a frame structure—and all view to the right was cut off when the automobile was alongside of the building; but, notwithstanding this, the driver went on, though when he was on a line with the station he could have had a clear view of the railroad between the station and the first rail of more than four hundred feet to the west, and at a single glance he would have seen the approaching train, which he could have avoided by stopping the automobile. He admitted that, after he started from the point where he had stopped, looked and listened, he did absolutely nothing more as a precaution against the danger which he knew might be, and actually was, ahead of him, for this is his testimony: "Q. You regarded yourself as having done your whole duty by

stopping between the danger board and the station—you regarded yourself as having done your whole duty in doing that? A. Yes, sir. Q. You didn't think it was necessary to take any further precaution? A. No, sir." In view of this admission, the only possible conclusion is that the automobile was driven up to the railroad track in disregard of the care and vigilance required of the driver; but, even without the admission of his negligence, he could not be heard to say that he had exercised proper care, for if he had looked, where he ought to have looked, when he was on a line with the station, he could and would have seen the coming train.

The defendant's point asking that a verdict be directed in its favor should have been affirmed: Corcoran v. Pennsylvania Railroad Company, 203 Pa. 380; and the seventh assignment of error is sustained, as is the eighth, complaining of the refusal of the court below to enter judgment for the defendant non obstante veredicto.

The judgment for the plaintiff is reversed, and judgment for the defendant is here entered non obstante veredicto.